## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| XTREME CAGED COMBAT, ET AL., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | NO. 12-cv-3855 |
| ECC FITNESS (AKA EXTREME CAGE COMBAT), ET AL., | : | |
| Defendants. | : | |

**MEMORANDUM & ORDER**

**Joyner, C. J.**                                    **November 20, 2012**

Before this Court are Defendants' Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Doc. No. 10) and Plaintiffs' response thereto (Doc. No. 11). For the reasons set forth in this Memorandum, the Court will grant the motion in part and deny it in part.

### I. FACTUAL & PROCEDURAL BACKGROUND

Xtreme Caged Combat ("Plaintiff" or "Xtreme") is a mixed martial arts promotion and training facility in Philadelphia, Pennsylvania.[1] The business is registered and licensed, and is owned by Ryan Kerwin ("Plaintiff" or "Kerwin"). Xtreme has been in business since April of 2009. The business emblem for Xtreme is the letters "XCC" with a line cutting through the letters.

ECC Fitness, also known as Extreme Cage Combat ("Defendant"

---

[1] The facts as recited below are according to the Plaintiff in the Complaint (Doc. No. 1) and the Supplemental Complaint (Doc. No. 9).

1

or "ECC Fitness") is a mixed martial arts training facility in Feasterville, Pennsylvania. ECC is owned by Steve Rosenblum ("Defendant" or "Rosenblum") and Ofa Donaldson ("Defendant" or "Donaldson"). ECC has been doing business under its current name since around December of 2011. The business emblem for ECC Fitness is the letters "ECC" with a line cutting through the letters. Rosenblum and Donaldson knew Kerwin personally and had knowledge of Xtreme prior to operating their business as ECC Fitness.

In April or May of 2012, the Defendants sent out an advertisement in "Clipper Magazine," advertising their business with the ECC Fitness name, the emblem, and the words "Extreme Cage Combat" appearing in the advertisement. The Defendants also used t-shirts with the same for promotional events, and advertised their facility using the same on Rosenblum's Facebook page.

Kerwin and Xtreme commenced the present action by filing a complaint with this Court on July 9, 2012. They asserted claims for trademark infringement or dilution, under 15 U.S.C. § 1125(a)(1), commonly known as the Lanham Act.

On July 12, 2012, James Scott ("Plaintiff" or "Scott") went to ECC Fitness and served a copy of the original complaint and summons on Donaldson and Rosenblum. After he was served, Donaldson approached Scott's car and punched the front passenger

side window and kicked a dent in the rear passenger side door. Scott filed a police report documenting the damage, and had the car repaired. Kerwin reimbursed Scott for the expense of the repairs.

Kerwin and Scott then filed a "Supplemental Complaint" with this Court on August 7, 2012, asserting a claim for damage to personal property supplemental to Kerwin and Xtreme's trademark infringement claim. The Plaintiffs are proceeding *pro se*.[2]

On August 30, 2012, the Defendants moved to dismiss the complaint in its entirety. The Defendants claim that there is no subject matter jurisdiction over the claims, and the complaint fails to state a claim upon which relief can be granted. In the alternative, the Defendants move for a more definite statement, in the form of a single amended complaint.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a case for lack of subject matter jurisdiction. A motion pursuant to Rule 12(b)(1) affords the opportunity to challenge

---

[2] It is unclear what form of business Xtreme has taken. The Complaint states that Xtreme is a "state registered and licenced" facility. (Compl., ¶ 3). The Court takes this opportunity to note that it is well settled that corporations may appear in federal court only through licensed counsel. Dougherty v. Snyder, 469 Fed. App'x 71 (3d Cir. 2012). The same applies for limited liability corporations, as they have a separate legal identity. Id. Therefore, if Xtreme has a formal corporate formation and separate legal identity, Kerwin may not represent Xtreme. See 28 U.S.C. § 1654.

the Court's jurisdiction both on the face of the complaint and as a factual matter.  Common Cause of Pennsylvania v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009).  When considering a motion under Rule 12(b)(1), no presumption of truthfulness attaches to plaintiff's allegations because the issue is whether the court has power to hear the case.  Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977).  Additionally, a court may consider evidence outside the pleadings in reviewing a factual challenge under Rule 12(b)(1).  Id.; Gotha v. U.S., 115 F.3d 176, 178-79 (3d Cir. 1997).

**B.  Federal Rule of Civil Procedure 12(b)(6)**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Krantz v. Prudential Invs. Fund Mgmt., 305 F.3d 140, 142 (3d Cir. 2002) (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

4

"Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. Id. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. Great Western Mining & Mineral Co. V. Fox Rothschild LLP, 615 F.3d 159, 176 (3d Cir. 2010) (citing Twombly, 550 U.S. at 555). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). "When presented with a *pro se* litigant, [the Court has] a special obligation to construe his complaint liberally." Higgs v. Attorney General of the United States, 655 F.3d 333, 339 (3d Cir. 2011) (citations omitted). "Thus, even if a *pro se* plaintiff's claims are not set out in the clearest fashion, the Court is obligated to discern all the possible claims that the Plaintiff may be alleging." Thomas-Warner v. City of Phila., 2011 U.S. Dist. LEXIS 146029, at *10 (E.D. Pa. Dec. 20, 2011). However, in doing so the Court still determines whether *pro se* plaintiffs have alleged sufficient facts to support the claims divined from the pleadings. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

5

suffice." Iqbal, 556 U.S. at 678. Moreover, "[a]lthough the Court must accept well-pleaded facts as true, it need not credit bald assertions or legal conclusions." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

The Defendants argue in their Motion that there is a lack of diversity jurisdiction, no federal question jurisdiction over the claims in the Complaint, and no supplemental jurisdiction over the Plaintiffs' state law claim in the Supplemental Complaint. (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 5-7, 10-11, Doc. No. 10).

As acknowledged in the Complaint and Supplemental Complaint, all of the parties to the action are citizens of the state of Pennsylvania. Therefore, diversity jurisdiction cannot form the basis for subject matter jurisdiction over this action. See 28 U.S.C. § 1332.

The Defendants assert that "the Plaintiffs never once presented a claim to relief that rests upon a Federal right on the face of their complaint." (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 7, Doc. No. 10). The district courts have federal question subject matter jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.

§ 1331.  A court determines whether federal question jurisdiction exists by applying the "well-pleaded complaint rule."  Under that rule, "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Goepel v. Nat'l Postal Mail Handlers Union, 36 F.3d 306, 309 (3d Cir. 1994).  Contrary to the Defendants' assertion, the Plaintiffs have identified a federal statute that provides a right of action for the Plaintiffs' trademark claim.  Plaintiffs identify 15 U.S.C. § 1125(a)(1), commonly known as the Lanham Act and covering trademark claims, under the jurisdiction and venue section of the Complaint.  (Compl., ¶ 1, Doc. No. 1).  Between this identification and the claims stated, it is clear from the face of the Plaintiffs' Complaint that there is a federal question.

The Plaintiffs' Supplemental Complaint asserts a state law claim for property damage.  The Plaintiffs claim that the Court has supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367.  (Supplemental Compl., ¶ 1, Doc. No. 9).  The Defendants argue that the Court does not have supplemental jurisdiction over this claim, because it is not part of the same case or controversy as the claims in the original Complaint and the claims are not derived from a common nucleus of operative fact.  (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 10, Doc. No.

7

10).

Section 1367 codified the principles of supplemental jurisdiction in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and permits a district court to exercise supplemental jurisdiction "where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003). However, Section 1367 "does not permit courts to take jurisdiction over tangentially related claims. The issue is whether there is a 'common nucleus of operative fact' and whether the claims are part of the 'same case or controversy under Article III.'" Krell v. Prudential Ins. Co. Of Am., 148 F.3d 283, 303 (3d Cir. 1998).

The Plaintiffs argue that since the damage to Scott's car occurred in the process of effectuating process in the federal claim, the damage is an expense directly related to the federal claim. (Pl.'s Br. in Opp. to the Defs.' Mot. to Dismiss, at 7, Doc. No. 11).[3] The Court cannot agree. The property damage claim is legally and factually unrelated to the trademark claims. The only overlap between the claims is that the state law claim occurred while attempting to commence the federal law claim. Had the process server been involved in a car accident on his way to

---

[3] Because the Plaintiff's opposition brief lacks page numbers, the Court refers to ECF's pagination.

8

serve process in the suit, the Court surely would not have supplemental jurisdiction over a subsequent tort suit for personal injury. The same logic applies here. The purpose of supplemental jurisdiction is to promote "judicial economy, convenience and fairness to litigants." De Asencio, 342 F.3d at 308 (quoting Gibbs, 383 U.S. at 726). Because there is no overlap in the factual predicate of the two claims, the purposes of supplemental jurisdiction would not be furthered here, and the claims cannot be considered part of the same case or controversy to fulfill the requirements of Article III.

Therefore, the Court lacks subject matter jurisdiction over the claims in the Supplemental Complaint, and dismisses the Supplemental Complaint in full.[4] Having found subject matter jurisdiction over the trademark claims only, the Court now turns to address whether the complaint has stated a claim for trademark infringement or dilution.

### B. Failure to State a Claim

The Defendants argue that the Plaintiffs fail to state a claim for trademark infringement or dilution under the Lanham

---

[4] The crux of the Defendants' argument in their Motion for a More Definite Statement is that due to the Plaintiffs' filing of both a Complaint and a Supplemental Complaint, it is impossible to determine which Plaintiffs are pleading which causes of action, and the Plaintiffs should provide a single amended complaint that clearly sets forth their allegations. (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 3, Doc. No. 10). Because the Court is dismissing the Supplemental Complaint in full due to lack of subject matter jurisdiction, this obviates the need for the Plaintiffs to provide a single amended complaint. Therefore, the Motion for a More Definite Statement is denied.

Act. (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 8-9, Doc. No. 10). They argue that the Plaintiffs have not established that they own a valid and legally protectable trademark by registration and they have not stated that the Defendants' use of the mark has created confusion. They also argue that the Plaintiffs have not alleged any of the elements of a trademark dilution claim.

### 1. Trademark Infringement Claim

Federal claims for trademark infringement are governed by the Lanham Act, 15 U.S.C. § 1051 et seq. The Act "was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in ... commerce against unfair competition.'" Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-768 (1992) (alteration in original). Section 43(a) of the Act applies to registered trademarks, but "it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration...are for the most part applicable in determining whether an unregistered mark is entitled to protection." Id. at 768. "The Lanham Act defines trademark infringement as use of a mark so similar to that of a prior user as to be likely to cause confusion, or to cause mistake, or to deceive." Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 711 (3d Cir. 2004).

A cause of action for trademark infringement requires a

plaintiff to prove: (1) the mark is valid and legally protectable; (2) the plaintiff owns the mark; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000). Additionally, to prevail in cases where the trademark is unregistered, the plaintiff must also show: (1) he was the first to adopt the mark in commerce; (2) he has used the mark continuously in commerce since its adoption; and (3) his mark is inherently distinctive or has acquired secondary meaning. Douglas v. Osteen, 317 Fed. App'x 97, 99 (3d Cir. 2009).

Xtreme's mark is valid and legally protectable. If a mark has not been federally registered, "validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." Ford Motor Co. V. Summit Motor Prods., 930 F.2d 277, 292 (3d Cir. 1991). "Secondary meaning exists when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000). Such secondary meaning is established through advertising that links the mark and the provider of services advertised under the mark. Id. Construing the Plaintiffs' *pro se* complaint liberally, the Plaintiffs have

11

pled that they have used and advertised with the mark in such a way to create a secondary meaning. The name Xtreme Caged Combat and its emblem have been advertised to the public as a martial arts training facility in the Philadelphia area; specifically, the one owned by Kerwin.

The Plaintiffs have sufficiently pled facts that the Defendants' use of the mark is likely to create confusion concerning the origin of goods or services. A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Everett Laboratories, Inc. v. Vertical Pharms., Inc., 227 Fed App'x 124, 127 (3d Cir. 2007) (quoting A & H Sportswear, 237 F.3d at 211). To decide whether similar marks create a likelihood of confusion, the Third Circuit has fashioned a non-exhaustive list of ten factors:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the

12

goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 471 (3d Cir. 2005) (citing Interpace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983)). Not all of the aforementioned factors will be relevant in each case, and different factors may receive different weights. Id.

Several of the factors cited above suggest that the Plaintiffs have pled facts sufficient to show that there is a likelihood of confusion. First of all, the Plaintiffs have pled facts suggesting that there is a great degree of similarity between the two marks. The full names are almost identical, and the marks used by the two companies bear similarities as well. (Compl. ¶¶ 11-19, Doc. No. 1). Second, with respect to the fifth factor, the Plaintiffs have pled that the Defendants knew Kerwin and Xtreme prior to using the name ECC Fitness and ignored requests to refrain from promoting their business as such. (Id.

at ¶¶ 15, 20-21). Third, with respect to the eighth factor, the Plaintiffs have pled that the targets of the sales efforts of the two companies is the same. Both operate mixed martial arts facilities in the Philadelphia region. (Id. at ¶¶ 10-12, 22-26). Finally, with respect to the ninth factor, there is a similarity of function of the services offered by Xtreme and ECC Fitness such that there would be a relationship of the goods in consumers' minds. The Defendants argue that Xtreme is a mixed martial arts promotion and training facility while ECC Fitness will be understood as a fitness facility, and therefore, they are two distinct types of businesses. (Mem. of Law in Supp. of Mot. for a More Definite Statement or, in the Alternative, to Dismiss, at 9, Doc. No. 10). However, the Plaintiffs have pled that ECC Fitness is "a mixed martial arts training facility that fights for local fight promotions." Therefore, the Plaintiffs have sufficiently pled facts suggesting that there is a similarity in function of the two businesses, which the Court must accept as true for the purposes of this motion to dismiss. After evaluating all of the relevant factors, the Court finds that the pleadings are sufficient to fulfill the Plaintiffs' burden of showing that the Defendants' use of the mark creates a likelihood of confusion.

The Plaintiffs have also pled the additional requirements for unregistered trademarks. The Plaintiffs have pled that they

were the first to adopt the use of the mark, and have used it continuously in commerce. The Plaintiffs plead in the Complaint that Xtreme has operated since April 29, 2009. (Compl. ¶ 11, Doc. No. 1). The Plaintiffs also state that ECC began doing business under that name around December of 2011. (Id. at ¶ 13). Further, as discussed above, the Plaintiffs have pled that the mark has acquired secondary meaning. Therefore, the Plaintiffs have sufficiently pled facts to state a claim for trademark infringement under the Lanham Act.

### 2. Trademark Dilution Claim

It is somewhat unclear from the Complaint whether the Plaintiffs are attempting to assert a trademark dilution claim separate from their trademark infringement claim under 15 U.S.C. § 1125(a)(1). Claims for trademark dilution are covered by 15 U.S.C. § 1125(c). To establish a claim under this section, a Plaintiff must plead: (1) "the plaintiff is the owner of a mark that qualifies as a 'famous' mark;" (2) "the defendant is making commercial use in interstate commerce of a mark or trade name;" (3) the defendant's "use began after the plaintiff's mark became famous;" and (4) the defendant's "use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services." Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000). The statute states that a mark is famous "if it is widely

15

recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Factors to consider in determining whether a mark has the requisite degree of recognition include: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; (4) whether the mark was registered.  15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

The Plaintiffs have failed to plead facts sufficient for the Court to conclude that their mark is "famous" as required for a trademark dilution claim.  The Plaintiffs have pled no facts with respect to the reach of their advertising, the sales that the Plaintiffs have generated, or recognition of the mark as famous.  Therefore, the Court grants the Defendants' Motion to Dismiss with respect to the Plaintiffs' trademark dilution claim, but will allow the Plaintiffs leave to amend their Complaint to plead facts supporting a claim of trademark dilution if they can do so.

## **IV.  CONCLUSION**

For the foregoing reasons, the Court grants the Defendants' Motion in part and denies it in part.  The Court dismisses the claim in the Supplemental Complaint for lack of subject matter jurisdiction.  The Court denies the Defendants' Motion to Dismiss

with respect to the trademark infringement claim.  The Court dismisses the Plaintiffs' trademark dilution claim, but gives the Plaintiffs leave to amend the Complaint to assert facts to support the trademark dilution claim.  Finally, the Court denies the Defendants' Motion for a More Definite Statement.